AUSAs Katherine Cheng and Diarra M. Guthrie

# 24 MAG 4040

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRYAN AUSTERMANN,<br><br>                Defendant. | **SEALED COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 2252A(a)(5)(B), (a)(2)(B), (b)(1), (b)(2), and 2<br><br>COUNTY OF OFFENSE: NEW YORK |

SOUTHAAERN DISTRICT OF NEW YORK, ss.:

MATTHEW DERAGON, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Distribution of Child Pornography)

1.      From at least in or about February 2023, through at least in or about September 2023, in the Southern District of New York and elsewhere, BRYAN AUSTERMANN, the defendant, knowingly received and distributed material that contained child pornography using a means and facility of interstate and foreign commerce and that had been mailed and had been shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, to wit, AUSTERMANN distributed files containing images of child pornography, including sexually explicit images and videos of prepubescent minors and minors who had not attained 12 years of age, on messaging applications and a cloud storage service, among other means, while in New York, New York, and to a recipient in New York, New York.

(Title 18, United States Code, Sections 2252A(a)(2)(B), (b)(1), and 2.)

### COUNT TWO
### (Possession of Child Pornography)

2.      From at least in or about January 2023 through at least in or about October 2023, in the Southern District of New York and elsewhere, BRYAN AUSTERMANN, the defendant, knowingly possessed and accessed with intent to view, a book, magazine, periodical, film, videotape, computer disk, and other material that contained an image of child pornography that had been mailed, shipped and transported using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, to wit, AUSTERMANN possessed child pornography, including sexually explicit images and videos of prepubescent minors and minors who had not attained 12 years of age, on his cellphone, tablet, and laptop, in his residence in New York, New York.

(Title 18, United States Code, Sections 2252A(a)(5)(B), (b)(2), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I have been a Special Agent with the FBI for approximately ten years. I am assigned to an FBI squad charged with enforcing federal laws prohibiting child pornography and other forms of child exploitation. As such, I have worked on numerous investigations and prosecutions involving adults who possess and distribute child pornography. This affidavit is based upon my personal participation in the investigation of this matter, as well as on my conversations with other law enforcement officers and my examination of documents, reports, and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the investigation. Where the contents of documents or the actions, statements, or conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Offense Conduct

4. Between at least in or about January 2023, up to and including at least in or about September 2023, I used an undercover account ("UC Alias-1") on a particular messaging application ("Application-1") to communicate with a user of Application-1 ("User-1"). Based on my involvement in the investigation, including my conversations with other law enforcement officers and my communications on Application-1 as UC Alias-1, I learned the following, in substance and in part:

a. In or about January 2023, User-1 invited UC Alias-1 into a chat group on Application-1 called "nyc dads," which consisted of approximately five members (the "Chat Group"). The Chat Group discussed the sexual exploitation of children and referenced that at least some of the users had previously viewed child sexual exploitation materials together in person.

b. In or about January 2023, one member of the Chat Group introduced himself through Application-1 as "Bryan" ("User-2") and sent the Chat Group a video of himself masturbating, in which User-2's face was visible. As described further below, User-2 was later identified to be BRYAN AUSTERMANN, the defendant. *See infra* ¶¶ 5–6. User-2 told the Chat Group that he "wanted to be able to use the video for other stuff, but I definitely was watching cp and thinking about what a ped I am." On or about January 16, 2023, User-2 also stated "I love 5-7 but could definitely go much lower. But also want a boy who can cum."

c. In or about February 2023, UC Alias-1 began communicating on a separate chat thread with User-2 on Application-1. On or about February 23, 2023, User-2 sent UC Alias-1 two links through a cloud storage and file hosting service (the "File Hosting Service"). The files accessible on those two links included a total of approximately 1,500 files, including over a thousand images and videos of male and female children who appeared to be between approximately one and sixteen years old, engaged in sexual activities with themselves, other children, and adults. UC Alias-1 was located in Manhattan when he received the two links from User-2.

d. From at least in or about February 2023 to at least in or about June 2023, User-2 and UC Alias-1 discussed on Application-1, among other things, meeting in person to watch child sexual abuse materials together, the other users in the Chat Group, and other topics related to child sexual abuse materials or sexual preferences. On or about February 19, 2023, UC

2

Alias-1 sent User-2 a message stating that UC Alias-1 lived in Manhattan. On or about February 21, 2023, User-2 sent UC Alias-1 a message that User-2 was in Manhattan. User-2 further wrote to UC Alias-1, among other things, that User-2's ideal video to masturbate to involved a "14 min one with the two brothers being directed by the dad . . . Ones [sic] probably late teens and the other is maybe 8ish." User-2 also informed UC Alias-1 that User-2 had watched child pornography in person with all but one member of the Chat Group.

   e. In or about early March 2023, User-2 told UC Alias-1 "I literally only watch Cp . . . I literally cum to cp many times a day" and "I'm such a horny pedofile [sic]." User-2 further messaged UC Alias-1 that "I want baby boy cock abs [sic] hole multiple times a day."

   f. The next day, on or about March 9, 2023, User-2 wrote to UC Alias-1 that "[t]he ideal would be to raise a son with another perv so we could fuck him every day whenever we wanted," "[a]nd he would grow up knowing that it's natural for his daddies to fill up his boy hole and make his boy cock squirt."

   g. On or about September 15, 2023, User-2 sent UC Alias-1 a message: "I'm watching a kid suck his dads cock right now" to which UC Alias-1 responded "Fuck that's hot" and "Loved [sic] to see you jerking off to that vid." User-2 replied "I love being a ped" and UC Alias-1 replied "I love that we are pedos." User-2 then immediately sent a video of himself nude and masturbating on a bed, next to an open laptop displaying a video containing child sexual abuse material. From the background of the video that User-2 sent of himself, it is apparent that User-2 was located at his residence in Manhattan, which was searched by law enforcement in or about October 2023. *See infra* ¶ 7.

Identification of Austermann

  5. Between at least in or about June 2023, up to and including in or about May 2024, I took over the account of User-1, another member of the Chat Group, on Application-1 ("UC Alias-2") with User-1's consent and in an undercover capacity. Using the account of User-1 as UC Alias-2, I directly communicated with User-2. Based on my involvement in the investigation, including my conversations with other law enforcement officers and my communications on Application-1 as UC Alias-2, I learned the following, in substance and in part:

   a. During the course of one communication, on or about June 29, 2023, User-2 stated that he kept his child sexual abuse videos on an external hard drive, and that he would then view those videos on his laptop.

   b. In or about mid-July 2023, User-2 messaged UC Alias-2 stating that User-2 was currently watching child pornography with another member of the Chat Group.

   c. In or about September 2023, User-2 sent UC Alias-2 a video that User-2 claimed depicted User-2. In the video, User-2's face is visible. The video of User-2 that was sent to UC Alias-2 shows the same individual as that depicted in the January 2023 video that User-2 shared with the Chat Group, as referenced above. *See supra* ¶ 4(b).

  6. Based on my involvement in this investigation, including my review of records obtained from a social media platform ("Platform-1") and records from a law enforcement database, I have learned the following, in substance and in part:

   a. An account with the username "Bryan Austermann" (the "Austermann Account") is on Platform-1.

   b. The Austermann Account's profile photographs and posts of the apparent user of the Austermann Account appear to depict the same individual in the videos sent by User-2 to UC Alias-1 in the Chat Group in or about January 2023, *see supra* ¶ 4(b), and to UC Alias-2 in or about September 2023, *see supra* ¶ 5(c).

   c. The Austermann Account lists the user's occupation as a vocalist for a cruise-ship company ("Cruise Ship Company-1"). This is consistent with messages sent by User-2 to UC Alias-1 on Application-1 in which User-2 stated that he was working on a cruise ship in or about February 2023.

   d. The Austermann Account lists, among other things, a particular telephone number for the user of the Austermann Account.

<u>Search of Austermann's Residence</u>

   7. Based on my participation in this investigation, including my conversations with other law enforcement officers and my review of records and reports, I have learned the following, in substance and in part:

   a. In or about October 2023, I and other law enforcement officers searched a residence of BRYAN AUSTERMANN, the defendant, (the "Austermann Apartment") pursuant to a judicially-authorized search warrant.

   b. During the search of the Austermann Apartment, law enforcement officers seized five devices, including an Apple laptop (the "Austermann Laptop"), a hard drive, an Apple iPhone (the "Austermann Phone"), an Apple iPod, and an Apple iPad (the "Austermann Devices").

   c. The Austermann Apartment is in the same neighborhood where User-2 told UC Alias-1 in or about February 2023 that User-2 lives. *See supra* ¶ 4(d).

   8. Based on my review of the five devices seized from the Austermann Apartment, which I and other law enforcement officers have reviewed pursuant to a judicially-authorized search warrant, I have learned the following, in substance and in part:

   a. The Austermann Phone is registered with the same telephone number as the number associated with the Austermann Account. *See supra* ¶ 6(d).

   b. An initial forensic review of the Austermann Devices revealed, in part, (i) approximately 1,015 files of child pornography, including approximately 410 images and 604 videos; and (ii) the files included images depicting children, appearing to be as young as a few months old, nude, and engaged in sexual activity with adults and other children. Among the files on the Austermann Devices were the following:

    i. A video approximately 14 seconds long depicting a male toddler, who appears to be under one year old, nude from the waist down laying on his back. An erect adult penis can be seen attempting to penetrate the anus of a toddler.

    ii. A video approximately 50 seconds long depicting a fully nude male, who appears to be approximately eighteen months old, laying face down on a bed. An erect adult penis can be seen fully and repeatedly penetrating the toddler's anus as the toddler attempts to crawl away from the adult male.

    iii. A video approximately 2 minutes and 4 seconds long depicting a male, approximately 7 years old fully nude and laying on a bed. The child's feet are bound together as well as his hands. The child is wearing a collar and is gagged by a ball secured in his mouth by a belt. The child is masturbating. An adult hand enters the video frame and begins touching the child's erect penis.

   c. On the Austermann Phone, within a social media application installed on the device ("Application-2"), were screenshots of communications between BRYAN AUSTERMANN, the defendant, and an individual who self-identified in these communications as being 16 years old ("Victim-1"). As described further below, Victim-1 identified AUSTERMANN as the individual with whom Victim-1 exchanged messages. Based on an interview of Victim-1, conducted by law enforcement officers, and a forensic review of the Austermann Laptop, I learned the following, in substance and in part:

    i. In or about October 2022, Victim-1 met AUSTERMANN on a website where people can share photographs, and they transitioned to communicating with one another through Application-2.

    ii. Victim-1 stated that, in general, Victim-1 and AUSTERMANN talked about "mostly sexual stuff," AUSTERMANN was into the "daddy-son aspect of things," and AUSTERMANN told Victim-1 that AUSTERMANN was communicating with other "boys" as well.

    iii. When AUSTERMANN asked Victim-1 how old Victim-1 was, Victim-1 told AUSTERMANN Victim-1 was 16 years old, which was also subsequently verified by the state identification Victim-1 provided to FBI officials.

    iv. Based on my communications with Victim-1, I understand that AUSTERMANN sent Victim-1 photographs that were sexual in nature, including a photograph of his penis and body. In return, Victim-1 sent AUSTERMANN photographs of sexually explicit conduct as well.[1]

    v. On one occasion, AUSTERMANN called Victim-1 through Application-2 and directed Victim-1 "what to show" AUSTERMANN, that is, what parts of his body or sexually explicit acts to show.

    vi. AUSTERMANN invited Victim-1 into a group chat on Application-2 with AUSTERMANN, among others, which Victim-1 joined, and while in the group chat, Victim-1 sent photographs and videos of sexually explicit conduct of Victim-1 to the group chat members.

---

[1] "Sexually explicit conduct" as used herein, is defined as set forth in Title 18, United States Code, Section 2256.

      vii.  Victim-1 stated that AUSTERMANN asked Victim-1 to meet AUSTERMANN in person, but Victim-1 did not ultimately agree to an in-person meeting.

      viii.  Victim-1 stopped communicating with AUSTERMANN on Application-2 in or about November 2022 and had no further contact with AUSTERMANN after that time.

      ix.  Law enforcement officials showed Victim-1 several sanitized photographs of sexually explicit conduct from the Austermann Laptop that were believed to be of Victim-1. Victim-1 acknowledged that the images were of Victim-1 and initialed the images.

      x.  When shown a photograph of AUSTERMANN, Victim-1 identified the person in the photograph as "Bryan," the person with whom he had exchanged images and videos of sexually explicit conduct in 2022.

  WHEREFORE, I respectfully request that a warrant be issued for the arrest of BRYAN AUSTERMANN, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

          /s/ Matthew Deragon, by SDA with permission
          _____
          MATTHEW DERAGON
          Special Agent
          FBI

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 19th day of November, 2024.

_____
THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York